ANDREA N. JONES, ESQ. (SBN 279791)
aj@joneslawgroupca.com
**JONES LAW GROUP**
1350 Columbia Street, Suite 303
San Diego, CA 92101
Tel.: (619) 946-8860

TIMOTHY M. KEEGAN (SBN 251085)
tim.keegan@ceartaslegal.com
GREG A. KLAWITTER (SBN 222746)
greg.klawitter@ceartaslegal.com
**CEARTAS LEGAL LLP**
12626 High Bluff Drive, Suite 440
San Diego, CA 92130
(858) 356-9979

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LUZZI,<br><br>             Plaintiff,<br><br>        v.<br><br>EPSILON SYSTEM SOLUTIONS INC., a California Corporation; CLAYTON KAMANU, an individual resident of California; JOSE GALICOT, an individual resident of California; and DOES 1-10<br><br>             Defendants. | Case No.:  **'20CV1313 AJB  BGS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

COMES NOW, plaintiff MELISSA LUZZI (hereinafter "Ms. Luzzi" or "plaintiff"), who alleges against defendants, and each of them, as follows:

1

# INTRODUCTION

1.      Corporate rot starts at the top and seeps down through the rank and file of a corporation.  So it is in this case.  EPSILON SYSTEM SOLUTIONS, INC. (hereinafter "ESSI"), has locations nationwide, including in Florida, Virginia, Hawaii, New Mexico, and Pennsylvania.  With a presence in more than 20 locations, Epsilon Systems' customers include the Department of Defense, Department of Energy, Department of Homeland Security and non-profit and commercial customers.

2.      As a company that does business with the federal government, it would stand to reason that ESSI would strive to operate beyond reproach in everything it does, whether it be accounting practices, health and safety protocols, or adherence to state and federal laws.  ESSI is not that kind of corporation.

3.      In October 2016, ESSI's Chief Financial Officer, pleaded guilty to wire fraud.  The guilty plea by the CFO (Stuart Teshima) stemmed from a lengthy investigation of ESSI conducted by the United States Attorney for the Southern District of California that found Mr. Teshima embezzled almost $1,000,0000 from ESSI and ESSI's customers.

4.      It comes as no surprise, therefore, that a corporation that turned a blind eye to illegal conduct by its second-highest ranking executive also fostered a work environment where supervisors and management systemically subjected female employees to severe and pervasive sexual harassment and assault.  ESSI's internal protocols for preventing sexual harassment in the workplace were so deficient, if not non-existent, that managers and executives believed they had carte blanche to, among other things, massage female employees, grind their penises against the shoulders of female employees, and recruit female employees to become live-in mistresses in exchange for monetary compensation.  These deplorable acts, and much more, were suffered by plaintiff Melissa Luzzi.

# GENERAL ALLEGATIONS

5.      Ms. Luzzi is an individual residing in the State of Colorado.

6.     Defendant ESSI is at all times relevant hereto a California corporate entity duly licensed to do business, and doing business, within the State of California, and at all times hereinafter mentioned, is an employer whose employees are engaged throughout this county and the State of California.

7.     Defendant CLAYSON KAMANU (hereinafter "Kamanu") is, and at all times herein mentioned was, an individual residing and/or working in the County of San Diego in the State of California.

8.     Defendant JOSE GALICOT (hereinafter "Galicot") is, and at all times herein mentioned was, an individual residing and/or working in the County of San Diego in the State of California.

9.     Ms. Luzzi is further informed and believes and thereon alleges that defendant ESSI and the DOE defendants are an "integrated enterprise" and share an interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control.  As such, they are a single employer, joint employer and/or integrated enterprise.  These defendants and DOES 1 through 10, inclusive are, and at all times herein mentioned were, joint employers and/or an integrated enterprise, employing plaintiff and all of plaintiff's supervisors and managers, and all individuals named in the complaint.

10.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names, plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible as hereinafter shown for the occurrences and injuries to plaintiff as herein alleged.

11.    Plaintiff is informed, believes, and alleges that, at all times herein mentioned, defendants, and each of them, were the agents of each of the other defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency and with the permission and consent of their co-defendants.

12.    ESSI and the DOE defendants are referred to herein as the "employer defendants."

13.    Defendant ESSI operates in the ship repair industry and is headquartered in San Diego, California.

14.    At the time of Ms. Luzzi's employment, ESSI's workforce was predominantly comprised of male employees (about 90% males).

15.    According to its website, ESSI primarily offers professional and technical services to "federal government customers," such as the Department of Defense, Department of Homeland Security, Department of Energy, Department of Labor, and the Department of Treasury.  ESSI also claims a "revenue greater than $100M" and its workforce is comprised of "nearly 1,000 skilled professionals," such as scientists, engineers, and technical specialists.

16.    Defendant Kamanu is in his mid-forties and was married with two children at the time Ms. Luzzi worked at ESSI.  His title with ESSI was "Production Manager." Kamanu was a high-level supervisor at ESSI and reported directly to the Vice President, Mike Veitch. Kamanu and Mr. Veitch worked together at ESSI for several years and frequently socialized outside of work.

17.    Defendant Galicot is approximately in his mid-forties and was married with two minor children at the time Ms. Luzzi worked at ESSI.

18.    Ms. Luzzi is a 30-year-old single female with a B.A. in Safety Studies that she earned from Keene State College in New Hampshire.  She moved to San Diego in 2012 and instantly fell in love with the warm weather and ability to surf and hike year-round.  When Ms. Luzzi moved to San Diego, she began to make a home and life for herself here.  She became actively involved in organized team sports, such as softball and beach volleyball, and she was a member of the San Diego Women's Lacrosse team.  Ms. Luzzi also had family and college friends who lived in the area.

**ESSI Hires Ms. Luzzi In the Environmental Health and Safety Department**

19.    Ms. Luzzi began working for ESSI in or around October 2014.  She was

hired as an Environmental Health & Safety Administrator I. Her job duties involved ensuring the safety of ESSI employees working on San Diego-based naval ships and verifying the job sites complied with health and safety regulations.

20.    At the time of her hire, and for the duration of her employment, Ms. Luzzi resided in San Diego and worked at ESSI's San Diego facility. Ms. Luzzi's immediate supervisor was Wally Finn, the Director of Quality Assurance & EHS. However, Mr. Finn worked in Virginia and Ms. Luzzi rarely, if ever interacted with him other than by phone or email. Ms. Luzzi also reported to the General Manager of Epsilon, Kamanu, and the Quality Assurance Lead, Galicot.

21.    Kamanu supervised every job that Ms. Luzzi worked on. Kamanu's job required him to oversee projects, ensure they moved forward as scheduled, and handle any issues that may arise on the ship. Kamanu had authority to hire and fire employees.

22.    At all times during her employment Ms. Luzzi performed her job duties competently and promoted to Environmental Health & Safety Administrator II. Her total compensation exceeded $70,000 at the time of her constructive discharge.

23.    During her employment with ESSI, Ms. Luzzi worked with defendants Kamanu and Galicot. Both Galicot and Kamanu were employed by ESSI as managers/supervisors.

**Defendants Fail to Keep Ms. Luzzi Safe from Severe Sexual Harassment**

24.    Almost as soon as ESSI hired her, Ms. Luzzi suffered severe and pervasive sexual harassment from Kamanu and Galicot. The sexually harassing conduct she suffered by Kamanu and Galicot includes, but by no means is limited to, the following:

**Sexual Harassment by Kamanu**

25.    Kamanu leered at Ms. Luzzi's breasts and body.

26.    Returning from a job site and on the way back to the office with Kamanu (Ms. Luzzi was riding in his car), Kamanu unexpectedly stopped at a pornographic retail store and told Ms. Luzzi to go inside with him, during which time he pointed out to her vibrators he used with his wife, showed her "butt plugs," and asked her if she

liked them.

27.　At work Kamanu frequently talked to Ms. Luzzi about the sex he had with his wife.

28.　At work Kamanu sought to induce Ms. Luzzi into telling him about her sex life by asking her questions—a tactic he knew would be difficult to circumvent without making Ms. Luzzi feel more awkward.  For example he asked: "what do you like to do in bed?"; "do you like doggie-style?"; "do you use a vibrator?"

29.　Kamanu sent Ms. Luzzi a picture of him with an erection and when she did not reply he sent her a text asking: "why aren't you answering?"

30.　Kamanu regularly texted Ms. Luzzi unwanted sexually explicit messages and showed and/or texted Ms. Luzzi sexually explicit photographs including, but not limited to, male and female genitalia, female breasts and buttocks, women dressed in lingerie, photographs/memes with references to "hookers," "threesomes," "masturbation," "blow jobs," and a "dick pic." Some of these offensive texts are attached hereto as **Exhibit 1**.

31.　At work Kamanu pressured Ms. Luzzi to let him give her massages.

32.　Kamanu approached Ms. Luzzi from behind while she was sitting at her desk facing the computer, and violated her space and massaged her shoulders without her consent.

33.　Kamanu occasionally appeared behind Ms. Luzzi as she sat in front of her computer and grinded his pelvic area on her shoulder.

34.　At work Kamanu commented about other women in the office suggesting they were "freaks" in the bedroom.

### Sexual Harassment by Galicot

35.　Galicot leered at Ms. Luzzi's body.

36.　Galicot forcibly kissed Ms. Luzzi on the forehead.

37.　At work Galicot repeatedly told Ms. Luzzi he "loved" her and offered to pay off her student loans, to which Ms. Luzzi repeatedly tried to the change the subject

to his wife or child in hopes he would stop the harassment when reminded of his wife and family.

38.     At work Galicot repeatedly asked Ms. Luzzi about her sex and love life.

39.     In or around November or December 2018, shortly after Galicot was promoted to a supervisor role, Ms. Luzzi accompanied Galicot to a job site at Camp Pendleton.

40.     After completing their work at the job site Ms. Luzzi and Galicot went to lunch at a Del Taco restaurant nearby.  During that lunch, Galicot once again confirmed his "love" for Ms. Luzzi and went on to tell her: "I can help with your student loans.  I can knock that out and you can come live with me.  We can have a lot of fun together." Ms. Luzzi asked Galicot to stop the conversation, but he persisted, telling her "I think about you all the time.  I called my wife 'Melissa'."

41.     Ms. Luzzi repeatedly dismissed and tried to ignore the sexual advances, touching and text messaging in hopes they would eventually stop.  But the harassment increased in kind and degree.

42.     The foregoing, and more, unlawful sexual harassment and sexually offensive toughing pervaded Ms. Luzzi's work environment for the duration of her employment and did not cease until she had no choice but to resign.

43.     Finally, on March 6, 2019, Ms. Luzzi could no longer tolerate the sexual assaults, degradation, and sexual harassment she had been suffering.  That day Ms. Luzzi informed ESSI's human resources department that she was forced to involuntarily end her employment because of the intolerable sexual harassment and sexually offensive touching she had endured.

## VENUE AND JURISDICTION

44.     Federal diversity jurisdiction exists under 28 U.S.C. section 1332(a) in that Plaintiff is a citizen of the State of Colorado; defendant ESSI is a citizen of California as it is a California Corporation with its principal place of business in California; and defendants Kamanu and Galicot are citizens of California as they work

and/or reside in the State of California.  Therefore, complete diversity of citizenship exists. Additionally, the amount in controversy exceeds $75,000.

45.    Venue in the United States District Court, Southern District of California is proper pursuant to 28 U.S.C section 1391 because defendants are located in this District, and a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

46.    Plaintiff has timely filed a charge with the California Department of Fair Employment and Housing (hereinafter "DFEH") against all named defendants and received a "Right-to-Sue" letter from the DFEH.

## FIRST CAUSE OF ACTION

## SEXUAL HARASSMENT IN VIOLATION OF GOV. CODE SEC. 12940

(Against all Defendants)

47.    Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

48.    Defendants are employers as defined by Government Code section 12940, *et. seq.*

49.    Plaintiff was at all times material hereto an employee as defined by Government Code section 12940, *et. seq.*

50.    The conduct alleged herein created an intimidating, hostile and offensive work environment for plaintiff.  The foregoing conduct was nonconsensual and based on plaintiff's sex. The foregoing conduct created an intimidating and hostile work environment in violation of Government Code section 12940(h) and other provisions of the FEHA.  The harassment was sufficiently pervasive or severe as to alter conditions of plaintiff's employment and to create a hostile or abusive work environment.

51.    The conduct alleged herein, in addition to pervasively or severely altering the terms and conditions of plaintiff's employment, constituted *quid pro quo*

harassment.

52.    ESSI and DOES are strictly liable for said conduct because the unlawful harassment was committed by ESSI supervisors and managers.

53.    Alternatively, ESSI and DOES are liable because they knew or should have known of the sexual harassment and failed to take immediate and appropriate corrective action.  Said conduct violated Government Code section 12940(j)(1) and other provisions of the FEHA.

54.    As a direct and proximate result of the acts of defendants, and each of them, as alleged above, plaintiff has suffered humiliation, emotional distress, and has been generally damaged in an amount to be ascertained at the time of trial.

55.    As a direct and proximate result of the acts of defendants, as alleged above, plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial.  Pursuant to the provisions of California Government Code section 12965(b), plaintiff is entitled to the reasonable value of such attorneys' fees and costs.

56.    The above-described acts of all defendants were willful, intentional and malicious and done with the intent to vex, injure and annoy plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said defendants and to deter others from engaging in similar conduct.  The above-described acts were authorized, ratified, or committed by an officer, director and/or managing agent.

## SECOND CAUSE OF ACTION

## FAILURE TO PREVENT SEXUAL HARASSMENT IN VIOLATION OF GOV. CODE SEC. 12940(k)

(Against ESSI and DOES 1-10)

57.    Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

58.    Defendants are employers as defined by Government Code section 12940,

*et. seq.*

59.    Plaintiff was at all times material hereto an employee as defined by Government Code section 12940, *et. seq.*

60.    In violation of Government Code section 12940(k), ESSI an DOES failed to take all reasonable steps to prevent the harassment, discrimination and retaliation suffered by plaintiff, and failed to take immediate and appropriate corrective action to address, remedy and cure such conduct as alleged herein.

61.    ESSI and DOES failed to take effective steps to prevent harassment and retaliation and failed to effectively investigate plaintiff's claims of harassment. Any policy that purported to prevent harassment, discrimination and retaliation was ineffectively implemented and enforced, causing plaintiff to suffer the adverse conduct as alleged herein.

62.    During the material time alleged herein, ESSI and DOES had no adequate response to harassment, discrimination and retaliation that occurred within its workplace, and thereby established a policy, custom, practice or usage that condoned, encouraged, tolerated, sanctioned, ratified, and approved of harassing, retaliatory and discriminatory conduct.

63.    During the material time alleged herein, ESSI and DOES failed to provide adequate training, education, and information to its personnel and most particularly to its officers, managing agents and directors, and supervisors to address, reduce or eliminate unlawful employment conduct.

64.    As a result of the foregoing acts and omissions by plaintiff suffered a pattern and practice of sexual harassment and experienced a hostile, offensive, oppressive and intimidating work environment.  The acts and omissions set forth herein interfered with plaintiff's ability to perform her job duties, caused plaintiff humiliation and distress, disrupted plaintiff's emotional tranquility in the work place, affected her ability to perform job duties, and undermined her personal sense of well-being.

65.    As a proximate result of the conduct alleged herein, plaintiff has suffered

and continues to suffer substantial losses in earnings and other employment benefits she would have received but for the unlawful conduct.

66.     As a proximate result of the conduct alleged herein, plaintiff has suffered and continues to suffer embarrassment, anxiety, humiliation, and emotional distress.

67.     As a direct and proximate result of the conduct alleged herein, plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial.   Pursuant to the provisions of California Government Code section 12965(b), plaintiff is entitled to the reasonable value of such attorneys' fees and costs.

68.     The above-described acts of all defendants were willful, intentional and malicious and done with the intent to vex, injure and annoy plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said defendant and to deter others from engaging in similar conduct.   The above-described acts were authorized, ratified, or committed by an officer, director and/or managing agent.

## THIRD CAUSE OF ACTION

## NEGLIGENT RETENTION

### (Against ESSI and DOES 1-10)

69.     Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

70.     Defendants ESSI and DOES hired Kamanu and Galicot.   Defendants afforded them managerial and supervisory authority over employees, including plaintiff.   Accordingly, ESSI and DOES are strictly liable for negligently hiring and retaining Kamanu and Galicot.

71.     Defendants ESSI and DOES knew or should have known that Kamanu and Galicot were unfit and potentially a risk for sexual assault to other employees, and that continuing to employ them created a risk of exposing plaintiff to significant emotional trauma.

72.    As a direct and proximate result of the acts as alleged above, plaintiff has suffered emotional distress, and has been generally damaged in an amount to be ascertained at the time of trial.

73.    As a direct and proximate result of the conduct alleged herein, plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial.  Pursuant to the provisions of California Code of Civil Procedure section 1021.5, plaintiff is entitled to the reasonable value of such attorneys' fees and costs.

74.    The above-described acts of the defendants were willful, intentional and malicious and done with the intent to vex, injure and annoy plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said defendants and to deter others from engaging in similar conduct.  The above-described acts of all defendants, and each of them, were authorized, ratified, or committed by an officer, director and/or managing agent.

## FOURTH CAUSE OF ACTION

### CIVIL ASSAULT

(Against All Defendants)

75.    Plaintiff re-alleges and incorporates all preceding paragraphs herein.

76.    As alleged herein, Kamanu's and Galicot's acts of harassment, assault, and battery were committed with the intent to cause, and did cause, immediate injury to plaintiff.

77.    Plaintiff did not consent to Kamanu's and Galicot's conduct.

78.    As a direct and proximate result of the acts of all defendants, as alleged above, plaintiff has suffered emotional distress, and has been generally damaged in an amount to be ascertained at the time of trial.

79.    Kamanu's and Galicot's wrongful conduct was a substantial factor in bringing about general damages consisting of emotional distress.

80.    ESSI and DOES are strictly liable for the conduct and actions of

defendants Kamanu and Galicot because they were and are supervisors and/or managers of ESSI and DOES.  ESSI and DOES are also liable for Kamanu's and Galicot's conduct and actions because they knew, or should have known—by virtue of plaintiff complaining of the conduct and actions—that Kamanu and Galicot had intentionally interfered with or attempted to interfere with, by coercion and intimidation, plaintiff's civil rights as set forth above.

81.    As a direct and proximate result of the conduct alleged herein, plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial.  Pursuant to the provisions of California Code of Civil Procedure section 1021.5, plaintiff is entitled to the reasonable value of such attorneys' fees and costs.

82.    Plaintiff is informed and believes, that at all times and with respect to all actions alleged herein, Kamanu's and Galicot's actions were directly authorized and/or ratified by ESSI and DOES.  Plaintiff is further informed and believes that at all times and with respect to all actions alleged herein, Kamanu and Galicot were acting in the capacity as a manager/supervisor/agent/employee of ESSI and DOES and acted within the course and scope of employment.

## FIFTH CAUSE OF ACTION

### CIVIL CODE SEC. 1708.5

(Against All Defendants)

83.    Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

84.    As alleged herein, Kamanu and Galicot intended to and did cause an offensive contact with plaintiff's body in a sexual manner.

85.    Plaintiff did not consent to the touching.

86.    Plaintiff was deeply offended and frightened by Kamanu's and Galicot's unwelcome sexual touching.

87.    At all times herein, Kamanu and Galicot were managers and/or

supervisors for ESSI and DOES.

88.    Plaintiff is informed and believes, that at all times and with respect to all actions alleged herein, Kamanu's and Galicot's actions were directly authorized or ratified by ESSI and DOES.  Plaintiff is further informed and believes that at all times and with respect to all actions alleged herein, Kamanu and Galicot acted as an agent/employee of ESSI and DOES and acted within the course and scope of employment.

89.    As a direct and proximate result of the acts of all defendants, as alleged above, plaintiff has suffered emotional distress, and has been generally damaged in an amount to be ascertained at the time of trial.

90.    As a direct and proximate result of the conduct alleged herein, plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial.  Pursuant to the provisions of California Code of Civil Procedure section 1021.5, plaintiff is entitled to the reasonable value of such attorneys' fees and costs.

91.    The above-described acts of all defendants were willful, intentional and malicious and done with the intent to vex, injure and annoy plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said defendants and to deter others from engaging in similar conduct.  The above-described acts of all defendants, and each of them, were authorized, ratified, or committed by an officer, director and/or managing agent.

## SIXTH CAUSE OF ACTION

### CONSTRUCTIVE DISCHARGE

(Against ESSI and DOES)

92.    Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

93.    As set forth herein, defendants intentionally created and/or knowingly permitting and tolerated working conditions that were intolerable and or aggravating

to plaintiff.

94.     Among other things, and without limitation, defendants permitted managers and supervisors to sexually harass plaintiff, sexually assault her and create a hostile work environment.  Defendants also failed to help plaintiff; failed to respond to or investigate her report of sexual harassment and sexual assault; and failed to prevent such further unlawful conduct from reoccurring.

95.     The resulting working conditions experienced by plaintiff were intolerable, adverse and egregious.  Plaintiff complained of the foregoing illegal actions.  Defendants never took any action to investigate or correct any of these violations. As a result, plaintiff had no choice but to escape from an environment where such unlawful and unethical conduct was occurring.   Plaintiff's work conditions were so intolerable at the time of her resignation that a reasonable employer would have realized that an employee in her position would be compelled to resign.  Plaintiff was in fact compelled to resign, and verbally informed defendants at the time of her resignation that she could no longer work in an environment where such unlawful and unethical conduct was taking place.  A reasonable person under the same circumstances would be compelled to resign.

96.     As a direct and proximate result of the acts of the defendants, and each of them, as alleged above, plaintiff has incurred compensatory damages, including lost earnings and other economic damages.

97.     As a direct and proximate result of the acts of the defendants, and each of them, as alleged above, plaintiff has suffered emotional distress and has been generally damaged in an amount to be ascertained at the time of trial.

98.     As a direct and proximate result of the acts of the defendants, and each of the, as alleged above, plaintiff is entitled to recover attorneys' fees in this action pursuant to California Code of Civil Procedure section 1021.5.

99.     The above-described acts of the defendants, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy

plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said defendants and to deter others from engaging in similar conduct.   The above-described acts of the defendants, and each of them, were authorized, ratified, or committed by an officer, director and/or managing agent. agent.

**WHEREFORE, plaintiff demands judgment against all defendants as follows:**

1.    For nominal, actual and compensatory damages;

2.    For special and/or non-economic damages in an amount according to proof;

3.    Injunctive relief and declaratory relief that Kamanu, Galicot, ESSI and DOES violated the FEHA with regard to plaintiff and, further, enjoining ESSI and DOES from further violating the FEHA and ordering ESSI and DOES to institute legally compliant anti-discrimination, harassment and retaliation protocols.

4.    For punitive and exemplary damages;

5.    For interest accrued to date;

6.    For reasonable attorneys' fees and costs of suit and expenses pursuant to California Civil Code section 1021.5 and Government Code section 12965(b);

7.    For such other relief as the Court may deem just and proper.

DATED:  July 10, 2020          **THE JONES LAW GROUP**

**CEARTAS LEGAL LLP**


*/s/ Andrea N. Jones*

By:  GREG A. KLAWITTER
TIMOTHY M. KEEGAN
ANDREA N. JONES
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial in this matter.

DATED:  July 10, 2020                    **THE JONES LAW GROUP**

**CEARTAS LEGAL LLP**


_/s/ Andrea N. Jones_
By:  GREG A. KLAWITTER
TIMOTHY M. KEEGAN
ANDREA N. JONES
Attorneys for Plaintiff

Case No.:
COMPLAINT FOR DAMAGES

# EXHIBIT 1

Man: Hey... How much for a hand job?

Hooker: $10. You want one?

Man: Nope... I was just curious how much I save when I do it myself.













 








 

Teacher asked the class to spell a 12 letter word! Kid Says: Masturbation! Teacher Says: WOW! That's a mouth full!?! Kids says: No! you're thinking of Blow Job!












